Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 565 | **DATE** | 10/15/2001 |
| **CASE TITLE** | Flaherty vs. Marchand, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/25/2001 at 2:30 P.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in this Court's Memorandum Opinion and Order, defendants' motion to dismiss is granted in part and denied in part. (15-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 1 7 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 OCT 16 PM 4:35 | | |
| TP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHLEEN S. FLAHERTY )
)
)
)
) No. 00 C 0565
Plaintiff, )
)
v. )  Hon. John A. Nordberg
)
)
CECIL MARCHAND, BETTY )
BUKRABA, DANIEL STRALKA, and )
OFFICE OF CIRCUIT COURT CLERK )
OF COOK COUNTY, )
Defendants. )

**DOCKETED**
**OCT 1 7 2001**

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Flaherty brought this action against Defendants Cecil Marchand, Betty Bukraba, Daniel Stralka and the Office of the Circuit Court Clerk of Cook County ("Clerk's Office") raising a host of discrimination, civil rights, and state law claims. In her third amended complaint, Plaintiff alleges sexual harassment under Title VII (Count I), racial discrimination under Title VII (Count II), retaliation under Title VII (Count III), violation of equal protection (§1983) (Count IV), violation of substantive due process (Count V), and intentional infliction of emotional distress (Count VI).[1] Currently before the court is the Defendants' motion to dismiss most of the complaint.

---

[1] The individual defendants are sued in both their individual and official capacities as employees of the Clerk's Office.

1

## DISCUSSION

A.  **Motion to Dismiss**

Evaluating the legal sufficiency of a plaintiff's factual allegations requires courts to adhere to a strict standard. A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). However, the court need not accept conclusory legal allegations as true. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). All that F.R.C.P. Rule 8 requires to state a claim in federal court "is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Company*, 168 F.3d 1039, 1041 (7th Cir. 1999) Moreover, "[c]omplaints need not plead law or match facts to every element of a legal theory...." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

## B. The Title VII Claims (Counts I-III)–Time Barred

Defendants argue that Counts I (sex discrimination) and II (racial discrimination) must be

dismissed because they allege conduct that occurred more than 300 days before the filing of Plaintiff's EEOC charge. Defendant further argues that Count III (retaliation) must be partially dismissed to the extent it relies on alleged conduct which occurred more than 300 days before the filing of the charge.[2]

Plaintiff filed her EEOC charge on June 16, 1999 alleging discrimination on account of her gender and national origin and retaliation; she received a right to sue letter on November 2, 1999. (*See* Third Amended Complaint at ¶31 and Exhibit C.) However, she had previously filled out an EEOC charge questionnaire in June 1998. (*Id.* at Exhibit A.) No charge, however, was ever issued as a result of this earlier paperwork. Plaintiff alleges that she requested that a charge be filed in 1998, and that she did not discover that the EEOC failed to do so until June 1999, whereupon she immediately filed the 1999 charge. (*Id.* at ¶31.) As her claims in Counts I & II are exclusively based on alleged conduct which occurred prior to August 1998 (300 days before 1999 charge), and Count III is partially based on such conduct, they appear time-barred. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997)(in Illinois, if an individual fails to file an EEOC charge within 300 days of the alleged harassment, litigation of the claim is barred). Plaintiff can only avoid this result if she establishes her earlier filing was a "charge" or that equitable tolling applies.

Therein lies the flaw with the Defendants' presentation : at the pleading stage of the litigation, Plaintiff is not required to present any facts that establish any of her legal theories.

---

[2] Defendant also argues that punitive damages are not available on these counts, which Plaintiff concedes. Defendant also asks the court to limit Plaintiff's damages request to the statutory maximum. As Plaintiff is pleading in the alternative, and the case is in its early stages, Defendants' request is premature.

3

Plaintiff's pleadings, construed generously as required in evaluating a motion to dismiss, appear to indicate Plaintiff could conceivably establish that her earlier filing was a "charge" or that equitable tolling should apply. *See, e.g., Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 81(7th Cir. 1992) ; *Steffen v. Meridian Life Insurance Co.*, 859 F.2d 534, 542-44 (7th Cir. 1988), *cert. denied*, 491 U.S. 907 (1989). In these circumstances, a plaintiff is entitled to the opportunity to establish the facts that would prove her claims. *See Early*, 959 F.2d at 79-81. This issue cannot be definitively resolved before the summary judgment stage.

Defendants also claims that Plaintiff should not be permitted to claim equitable tolling because she failed to take corrective action promptly enough after she realized, or should have realized, that the EEOC failed to treat her 1998 filing as a charge. There appears to be no bright line establishing how much delay is fatal as a matter of law, but some equitable tolling cases have involved as much time delay as is present in this case. *See, e.g., Early*, 959 F.2d at 77 (eleven months between first and second attempt at filing EEOC charge). Therefore, this fact intensive inquiry would also be best addressed at the summary judgment stage.

Defendants' motion to dismiss is denied as to Counts I - III.

### C. Title VII Racial Discrimination Claim (Count II)–Beyond Scope of EEOC Charge

Defendants also maintain that Count II must be dismissed because racial discrimination is outside the scope of Plaintiff's EEOC complaint. In general , a Plaintiff may not assert claims under Title VII that were not asserted in the EEOC charge. *Harper v. Godfrey Co.*, 45 F.3d 143, 147-8 (7th Cir. 1995). For a plaintiff to include a claim in her complaint that was not included in her EEOC charge, she must pass a two prong test: (1) the claim must be like or reasonably related to the EEOC charges; and (2) the claim would reasonably develop from an EEOC

4

investigation into the original charge. *Id.* at 148. "'The claims are not alike or reasonably related unless there is a factual relationship between them. That means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*'" *Id.* (internal cite omitted)(emphasis in original). As to the second prong, deciding how broad an EEOC investigation will be is inherently a highly speculative exercise. *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

The 1999 charge does not contain the word "race," nor any words connoting a racial group, such as "white,""black,""Caucasian," "African American." (*See* Third Amended Complaint, Exhibit C.) In addition, the only boxes checked on the charge are for sex discrimination, national origin discrimination, and retaliation. (*Id.*) As to national origin, Plaintiff claims she was discriminated against because she is "Italian/Irish." (*Id.*)

We note that at least one case has noted an ethnic designation can be a defacto racial designation, and that racial and ethnic designations are often vague. *Torres v. City of Chicago*, No. 99cv6622, 2000 WL 549588, *2 (N.D. Ill. May 1, 2000) ("Hispanic"). Nonetheless, we cannot conclude that a claim of racial discrimination is "alike or reasonably related to" the claims in the charge. An African American supervisor who harasses Italians and the Irish, but not other "white" ethnic groups, appears to be discriminating on the basis of national origin not race.

The 1999 questionnaire, however, may fairly raise a claim of racial discrimination. In particular, the following passage:

> The complaint that I believed was told in confidence was known by most employees. Mr. Marchand labeled me a racist and contacted African American personnel to inform them of my claim. As a result, I was criticized by employees.

5

(Third Amended Complaint, Exhibit B.) In the context of the earlier passages about ethnic slurs, this adds a decidedly racial element to the claim. Unfortunately for the Plaintiff, there remains the issue of whether we can consider the questionnaire in assessing the scope of the charge.

There appears to be some conflict in Seventh Circuit authority regarding what materials may be considered in evaluating the charge. *Compare Cheek*, 31 F.3d at 502 ( "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations") and *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ( It is the charge, not the intake questionnaire, that is relevant in assessing the scope of the claim). As *Cheek* is distinguishable, as the document considered was a separate affidavit filed in support of the charge, and *Novitsky* is our appellate court's most recent comment on this issue, we must conclude the questionnaire is not controlling.

Defendants' motion to dismiss Count II on the alternative ground is granted.[3]

### D. Equal Protection/§1983 (Count IV)

Defendants concede that controlling authority holds that sexual harassment can constitute a violation of equal protection under the law. *See, e.g., Bohen v. City of East Chicago*, 799 F.2d 1180 (7th Cir. 1986). Nonetheless, Defendants argue the claim must be dismissed as it is inadequately pled as to municipal liability. The Defendants maintain that Plaintiff has failed to show there was any custom or policy condoning sexual harassment and that her lone allegation of a previous female victim is fatally lacking in specifics.

---

[3] Both sides have presumed that the "final" 1999 charge is the appropriate document for analyzing the scope of Plaintiff's charge, and the court has followed suit. As the record develops, however, Plaintiff may establish that her initial (1998) filing was the actual (timely) "charge." Given that this prior document contained nothing implying a racial claim, there will be no need to readdress this issue at that time.

6

"A plaintiff's complaint in a §1983 municipal liability claim need not meet any heightened standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). For a municipality to be liable for a wrongful act by a municipal employee, the wrongful act must have been caused by "(1) the enforcement of an express policy of the municipality, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policy making authority." *Id.*

Plaintiff alleges that the supervisors were aware of Marchand's misconduct and failed to remedy it. Indeed, Plaintiff alleges that the Defendant supervisors <u>informed her</u> that there had been previous complaints against Marchand, including one made by another woman who was transferred. (Third Amended Complaint at ¶21). Such conduct, if proven, can yield a finding of municipal liability. *See generally Bohen v. City of East Chicago*, 799 F.2d 1180, 1188-9 (7th Cir. 1986). Defendants' assertion about the lack of detail regarding the woman is unpersuasive, given that Plaintiff alleges Defendants informed her about the woman (Third Amended Complaint at ¶21) and that Plaintiff provides specifics about the other woman in the EEOC materials attached to her complaint. (*Id.* at Exhibit B.)

Defendants also argue that Count IV must be dismissed against Stralka and Bukraba in their personal capacities because they did not participate in the sexual harassment. However, Defendants concede in their argument that a supervisor can be held liable for their subordinates misconduct if they facilitated it, condoned it or turned a blind eye to it. (Defendants' Brief at 8 (citing *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1995)). As that

7

appears to be precisely what Plaintiff is alleging, Defendants' argument fails.

Defendants' motion to dismiss Count IV is denied.

### E. Substantive Due Process/§1983 (Count V)

Defendants argue that Plaintiff's substantive due process claim must be dismissed because she fails to adequately allege a violation of her bodily integrity and she has an adequate state remedy. These contentions appear to be nonstarters. Plaintiff has alleged unwanted physical contact of a sexual nature. If severe enough, this can rise to the level of a substantive due process violation. *See generally Wudtke v. Davel*, 128 F.3d 1057 (7th Cir. 1997). In addition, in a §1983 action, a plaintiff need not show that state remedies are inadequate. *See Draghi v. County of Cook*, 184 F.3d 689, 694 (7th Cir. 1999)

Defendants' motion to dismiss Count V is denied.

### F. Qualified Immunity

Defendants Stralka and Bukraba maintain that they are entitled to qualified immunity because they did not participate in the alleged sexual harassment and the allegations regarding their participation in any retaliation are not constitutional claims.

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, No. 00-3959, Slip op. at 6 (7th Cir. Sept. 28, 2001). The defense of qualified immunity can be overcome by alleging the violation of a constitutional right and showing that the right was clearly established at the time of the alleged wrongdoing. *Id.*

Defendants face an up hill battle at this stage of the litigation. As the Seventh Circuit has recently emphasized, dismissing a case on the grounds of qualified immunity is rarely appropriate. *Id.* "'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal...when defendants do assert immunity it is essential to consider facts in addition to those in the complaint.'" *Id.* (internal quote omitted). The task of obtaining a dismissal is further complicated by the fact that plaintiffs need not plead factual allegations to overcome anticipated qualified immunity defenses in their complaints. *Id.*

Defendants have conceded that the allegations of sex discrimination can constitute a violation of equal protection. Moreover, the Defendants specifically cite *Bohen*, a 1986 case, for the proposition. Thus, we have allegations regarding the violation of a constitutional right that has been established for many years. Moreover, Plaintiff has alleged the Defendants actually participated in the alleged discrimination by facilitating or, at the very least, turning a blind eye to Marchand's alleged actions for a long period of time. As previously discussed, Defendants conceded that this behavior can form the basis for supervisor liability. *Cf. Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994). For purposes of a motion to dismiss, we need go no further.

The court must conclude that Defendants' qualified immunity defense cannot be definitively resolved until the summary judgment stage when the factual record is more fully developed.

Defendants' motion to dismiss on the grounds of qualified immunity is denied.

### G. Intentional Infliction of Emotional Distress (Count VI)

Defendants maintain that Plaintiff's intentional infliction of emotional distress claim must be dismissed for three reasons: (1) because it is preempted under the Illinois Human Rights Act

("IHRA"); (2) it is covered by the Illinois Worker's Compensation Act ("IWCA"); and (3) none of the conduct alleged is outrageous enough to constitute a tort under Illinois law. Plaintiff responds that the IHRA does not bar her claim because it is not "inextricably linked" to the discrimination claims and the IWCA does not apply.

"... [U]nder the IHRA, courts lack subject matter jurisdiction to hear tort claims that are "inextricably linked" to civil rights violations under 775 ILCS 5/8-111(C)." *Figueroa v. City of Chicago*, No. 97cv8861, 1999 WL 163022, *9 (N.D. Ill. Mar. 12, 1999). Not all tort claims are preempted; only those that lack an independent basis apart from the duties imposed by the IHRA. *Id.* at *10.

As to Defendant Marchand, the claims are not preempted. The acts of unwelcome sexual contact allegedly committed by Marchand would constitute a common law tort completely independent of the discrimination claim. *See generally Adan v. Solo Cup, Inc.*, No. 01cv3966, 2001 WL 951726, *2-3 (N.D. Ill. 2001). As to Defendants Bukraba and Stralka, the opposite conclusion is warranted. The allegations regarding their failure to adequately supervise/control Marchand and their participation in the discriminatory retaliation all appear to be inextricably linked to and based upon the claims of discrimination. *See generally Figueroa*, at *11.

As to the IWCA, the court must conclude that, for purposes of a motion to dismiss, the claims are not barred. The caselaw has yielded two basic principles regarding the IWCA: (1) the employee has no right to collect damages from his employer or its employees for accidental injuries in the workplace; and (2) if an injury is intentionally inflicted by a coworker, it will be deemed accidental unless the coworker is the "alter ego" of the employer or the injury was authorized by the employer. *Cole v. Chicago Tribune Co.*, No. 96cv3320, 2000 WL 656644,

10

*13n.5 (N.D. Ill. May 23, 2000)(internal cite omitted). As Plaintiff has alleged that managers/supervisors were involved in and/or acquiesced to and encouraged the wrongful conduct, her claims must survive a motion to dismiss. *See Bartoli v. Applebee's Restaurant*, No. 00cv5954, 2001 WL 40798, *1-2 (N.D. Ill. Jan. 17, 2001); *Cole*, at *13n.5.

As to Defendants' final argument, the conduct alleged is sufficiently outrageous to survive a motion to dismiss. *See, e.g., Figueroa*, at *12.

Defendants' motion to dismiss as to Count VI is granted in part and denied in part.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

ENTER:

JOHN A. NORDBERG

United States Senior District Judge

DATED: October 15, 2001