# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 565 | **DATE** | 9/17/2003 |
| **CASE TITLE** | Kathleen S. Flaherty vs. Cecil Marchand, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]  Enter Memorandum Opinion and Order. The Court grants in part and denies in part Plaintiff's petition for attorney's fees [91-1] and costs [91-2], allowing for $279,708.86 in attorney's fees and $16,290.40 in court costs, for a total of $295,999.26. The Court denies Plaintiff's request for front pay damages [91-3]. The Court grants Plaintiff's motion for prejudgment interest [93-1] in the amount of $7,500.00 on her backpay award.

(11) ■  [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| DK | courtroom deputy's initials | | |

Number of notices

SEP 16 2003
SEP 18 2003
date docketed

docketing deputy initials

9/17/2003
date mailed notice

DK

mailing deputy initials

U.S. DISTRICT COURT
CLERK
03 SEP 17 PM 3:59

Date/time received in central Clerk's Office

Document Number

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KATHLEEN S. FLAHERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 00 C 0565 |
| v. ) | |
| ) | Magistrate Judge Morton Denlow |
| CECIL MARCHAND, BETTY BUKRABA, ) | |
| DANIEL STRALKA, in their individual and ) | |
| official capacities as employees of the ) | |
| OFFICE OF THE CIRCUIT COURT ) | |
| CLERK OF COOK COUNTY, a municipal ) | |
| corporation, the OFFICE OF THE ) | |
| CIRCUIT COURT CLERK OF COOK ) | |
| COUNTY, a municipal corporation, and the ) | |
| COUNTY OF COOK, a municipal ) | |
| corporation, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
SEP 1 8 2003

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Kathleen Flaherty ("Flaherty" or "Plaintiff") brought this action against Defendants Cecil Marchand, Betty Bukraba, and Daniel Stralka, in their individual and official capacities as employees of the Office of the Circuit Court Clerk of Cook County, and against the Office of the Circuit Court Clerk of Cook County, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, the Civil Rights Act of 1871, 42 U.S.C § 1983, the Constitution of the United States, and Illinois state law, alleging sexual harassment and discrimination, hostile work environment, retaliation, violation of substantive

due process, and intentional infliction of emotional distress. The Plaintiff later added the County of Cook as a party for the purposes of collection (Defendants collectively "Cook County" or "the County" or "Defendants").

The Clerk of the Circuit Court employed Flaherty in different capacities in two separate locations between March 4, 1997, and the time of her termination on July 7, 1999. Flaherty's complaint stems from her assertion that during her term of employment at the County's Records Center, Cecil Marchand, her supervisor, sexually harassed her. This harassment and her subsequent EEOC complaint provides the genesis for what Flaherty considered to be a series of retaliatory moves by the County, including transferring her out of the Records Center and ultimately terminating her.

Flaherty alleged six causes of action including: 1) a Title VII hostile work environment claim; 2) a Title VII *quid pro quo* sexual harassment claim; 3) a Title VII retaliation claim; 4) a § 1983 equal protection claim for gender discrimination; 5) a § 1983 charge of violation of substantive due process; and 6) a state law tort claim of intentional infliction of emotional distress. Flaherty sought compensatory, actual, and punitive damages.

Before trial, Defendants moved for summary judgment on certain counts. The Court withheld judgment and proceeded to trial on all claims. During trial, the Court granted Defendants' motion for judgment as a matter of law dismissing Plaintiff's equal protection, due process, and intentional infliction of emotional distress claims at the close of Plaintiff's case. The case went to the jury for decision on three claims against the Clerk of the Circuit

Court. The jury returned a verdict in Flaherty's favor on her Title VII hostile work environment claim and rejected the two remaining Title VII charges of *quid pro quo* sexual harassment and retaliation. The jury awarded Flaherty $75,000 in lost wages and benefits, and $100,000 in compensatory damages against the Office of the Clerk of the Circuit Court of Cook County. The County of Cook was joined as a party defendant for the purpose of collection. The current matter comes before the Court on Flaherty's petition for attorney's fees, bill of costs, front pay and motion for prejudgment interest.

## III. LEGAL ANALYSIS

Pursuant to 42 U.S.C. § 2000(e)-5(k) and 42 U.S.C. § 1988, Flaherty now petitions the court for an award of attorney's fees and costs expended in litigation. Plaintiff requests $336,906.75 in attorney's fees, $24,676.18 in costs and $130,000 in front pay. Defendants contest these charges on a number of theories. In addition, Plaintiff requests prejudgment interest on the $75,000 backpay award. The Court will discuss each in turn.

## A.    ATTORNEY'S FEES

Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ." 42 U.S.C. § 2000(e-5)(k). The purpose of an award of attorney's fees to the prevailing party in civil rights litigation is to protect the ability of those with civil rights grievances to obtain competent counsel and effectively access the judicial process. *City of Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986); *Simpson v. Sheahan*, 104 F.3d 998, 1002

3

(7th Cir. 1997). A party prevails if she materially alters the legal relationship of the parties. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Defendants do not dispute Plaintiff's status as a prevailing party.

The fees awarded must be reasonable, and a court must consider "'the relationship between the extent of success and the amount of the fee award.'" *Farrar*, 506 U.S. at 115-16 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983)). Justice O'Connor's concurrence in *Farrar v. Hobby*, 506 U.S. at 121-22, suggests a three-part analysis for determining a reasonable fee which this Court has applied in other cases, see, for example, *Koswenda v. Flossmoor School District No. 161*, 227 F. Supp. 2d 979, 990-95 (N.D. Ill. 2002), and which the Seventh Circuit applies when the damage award is minimal in relation to the amount sought, see, for example, *Simpson*, 104 F.3d at 1001. The factors are as follows: 1) the difference between the amount recovered and the damages sought, 2) the significance of the legal issues on which the plaintiff has prevailed, and 3) the public purpose of the litigation. *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring). The Seventh Circuit has further noted that the first factor is the most important and the second factor is the least important. *Simpson*, 104 F.3d at 1001.

In evaluating the rate of success in interrelated claims, time spent on unsuccessful claims is compensable if it contributes to the success of the winning claims. *Hensley*, 461 U.S. at 435; *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). The Seventh Circuit has rejected a "mechanical claim chopping approach," opting for one that focuses on the totality

4

of the success, rather than the individual successes or failures of each claim. *Jaffee*, 142 F.3d at 414 (citing *Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir. 1987)). Thus, research and arguments in support of failed claims are compensable, so long as they fall within the same common core of facts as the successful claim and are posited reasonably. *Id.* at 413-14.

The most basic formulation in computing a reasonable fee is the reasonable number of hours worked by the prevailing attorneys multiplied by a reasonable hourly rate – the lodestar figure. *Hensley*, 461 U.S. at 433; *Simpson*, 104 F.3d at 1001. The burden of showing the reasonableness of the number of hours being billed, and the rate at which they are billed, is on the prevailing party. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). A reasonable hourly rate is one "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). Furthermore, an attorney's actual billing rate for similar litigation is a "presumptively appropriate" surrogate for the market rate. *Id.* at 930.

Plaintiff's petition for fees and costs requests attorney's fees in the amount of $336,906.75 and court costs in the amount of $24,676.18. Defendants seek to have the fee amount reduced. The County disputes many of the hours attributed to the case, in addition to the hourly rates for lead counsel, John Galarnyk, his associates, and his office support staff. Defendants also raise the issue of Plaintiff's partial victory, pointing to her success on only one of the original claims as cause for a fee reduction. The Court will address these concerns in turn.

## 1) Disputed Hours

As prescribed by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. at 433-34, the basic calculation of the lodestar is derived from the number of hours worked by attorneys and support staff on the case, multiplied by the rate per hour charged by those attorneys and support staff. These calculations must be reasonable. *Id.* Plaintiff claims 1,329 hours[1] for her attorneys, including 374.25 hours for lead attorney John Galarnyk, 547.75 hours for associate Kathryn Hoying, 80.9 hours for associate Amanda Ripp, 224 hours for associate Nicholas Bax, 65.33 hours total[2] for paraprofessionals Julie Wojcik, Laura Hernandez, and Monic Utyro, and 62.05 for law clerk Charles Murphy. In support of these claims, Plaintiff has supplied detailed billing statements, listing the hours for each participant in the litigation. The Court has reviewed the billing statements and finds that they are detailed and prepared in a professional manner.

Defendants respond with a litany of complaints.[3] In *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1314 (7th Cir. 1996), the Seventh Circuit acknowledged the potential for reductions in hours billed in the event of inefficiency, duplicitous, or

---

[1]The petition actually shows a total of 1,328.78 hours, which, upon the Court's computation of the individual blocks of hours listed, is incorrect. The actual total is 1,354.28. This error in the petition is immaterial, however, because the calculation of the dollar amount is correct once the per hour multiplier is used.

[2]Specifically, it lists 14 hours for Wojcik, 48.5 for Hernandez, and 2.83 for Utyro.

[3]The Court will look at all but one, the last one listed by the Defendant: "All handwritten entries" because it is a composite of issues raised in earlier objections.

inadequate documentation.

Defendants' first claim is that because of illegible handwriting on some time sheets, the numbers asserted should be reduced, reflecting the ambiguity. While the two sides calculate different numbers, the only outstanding,[4] substantial difference is for associate Kathryn Hoying. Upon careful examination of the documents, the Court finds that Ms. Hoying did in fact record, in a legible manner, 547.75 hours. For the other attorneys and support staff involved, the Court calculates the following number of hours, which after further necessary reductions, will be used in the lodestar determination:

| | Court's Finding | Plaintiff's Claim | Defendants' Claim |
|---|---|---|---|
| John Galarnyk | 374.25 | 374.25 | 365.25 |
| Kathryn Hoying | 547.75 | 547.75 | 501.25 |
| Amanda Ripp | 78.15 | 80.90 | 79.65 |
| Nicholas Bax | 224.00 | 224.00 | 223.50 |
| Julie Wojcik | 14.00 | 14.00 | – |
| Laura Hernandez | 48.50 | 48.50 | – |
| Monica Utyro | 2.83 | 2.83 | – |
| Charles Murphy | 59.05 | 62.05 | – |

Defendants dispute many more entries under several different headings, all challenging essentially the same thing: an alleged overall lack of detail in the Plaintiff's records. These sections of dispute, "vague," "unidentified or non-specific conferences," "duplicate or redundant entries," "attention to file," "multiple attorneys," "attorney's doing secretarial work," and "all handwritten entries," attempt to persuade the Court to reduce the number of hours allowed for Plaintiff's attorneys. Among the chief complaints are the

---

[4]The parties agreed at oral arguments on the petitions that the nine hours not credited to John Galarnyk by the Defendant was a mistake, and that his claimed amount is 374.25 hours.

7

method by which Plaintiff's attorneys recorded their hours, the level of detail the attorneys devoted to describing their activities, the number of attorneys assigned to a task, and the suitability of certain tasks being assigned to attorneys at all.

After reviewing the documents, the Court finds that the Plaintiff's attorneys were properly fastidious in recording their hours and noting the services performed. The Court also disagrees with the Defendants' challenges to the need for the involvement of more than one attorney in certain activities, and the challenge over what kinds of tasks constitute an attorney's work.

Defendants seek reduction in Plaintiff's hours for several additional reasons. In the first of these, "plaintiff at fault," Defendants posit that work resulting from missteps taken in the course of discovery and otherwise during litigation should not be reflected in the prevailing party's fee award. While this makes sense in theory, in practice it is impossible to apply. First, not all issues of "fault" are adjudicated during the course of litigation, and thus determining which work entries should not be recognized becomes an extremely difficult and time-consuming task. In the course of many years of preparation, there will be motions filed and discovery withheld that may be claimed as one or another party's "fault." Unless the action either was egregious in some way or sanctioned by the court, however, it seems better off to consider the action as simply one of the processes that go into any lengthy, complex litigation. The Court reads this precept as an extension of the Supreme Court's related claims concept, so that missteps in the litigation process, which nonetheless

lead to a party's prevailing at trial, could be construed in the same manner as unsuccessful claims are construed in relation to successful claims when determining the totality of success. *See Hensley*, 461 U.S. at 1940. Additionally, in *Jaffee*, 142 F.3d at 414, the Seventh Circuit held that "unproductive legal research" in support of a successful claim was compensable. Based on these two considerations, the Court believes that, by extension, alleged errors and the resultant work hours performed by Plaintiff's attorneys in pursuing their successful tact in the litigation are compensable.

Also unpersuasive is the Defendants' argument entitled "June 2003 attorney's fees," which basically seeks a reduction in hours for time spent during trial, for the dates June 2 to June 11, 2003, because of vagueness in description, and excessiveness. On June 2 through June 5, lead counsel Galarnyk and second chair Bax billed between twelve and fourteen hours per day under the generic "attention to trial" notation. Although eight of those hours, more or less, can be accounted for as time in court, the other four to six reasonably were spent wrapping up the day's events and preparing for the next day's testimony. The Court sees no need for reduction of those dates generally. The Court, however, will reduce Mr. Galarnyk's hours by four for June 6, when court was adjourned early for his benefit. Mr. Bax's hours from that day will not be reduced.

In addition to the four hours subtracted from Mr. Galarnyk's total for June 2003, the Defendants, in their exhaustive examination of the Plaintiff's records, have discovered some discrepancies. Defendants, in their argument titled "non-Title VII/non-Flaherty," manage

to locate a few discrepancies in the Plaintiff's billing record. Although not all of the objections are sustainable, several are, including entries for October 10, 2000, April 25, 2002, and October 7, 2002. The Court will decrease Amanda Ripp's total hours by one-quarter hour and Kathryn Hoying's by six hours as a result of these objections.

Defendants also object to the entirety of Plaintiff's attorney's fees for the month of May 2003, except for certain entries by Nicholas Bax, based on two separate theories. First, the delay in the start of the trial, resulting from the Plaintiff's poor health, rendered the need for trial preparation in May null and void, because Plaintiff's counsel had been preparing through most of April. Second, the revolving door of associates on the Plaintiff's side found its final participant, Nicholas Bax, in early April before the trial, and thus many of his hours were simply redundancies spent becoming familiar with the history of the litigation. The Court will address these in turn.

John Galarnyk, lead counsel for the Plaintiff, spent the early part of April 2003 preparing for a trial that was set to begin on April 28, 2003. This preparation, according to billing records, consisted of twenty-six hours of entries[5] tabbed as "trial preparation." The Court does not consider twenty-six hours to be an overly aggressive pace for last minute trial preparation. Thus, his continued preparation through May should not come as a surprise, nor should the hours be disallowed. Furthermore, the Defendants present no evidence that Laura Hernandez's one hour of work in May was unreasonable.

---

[5]Specifically, those entered on the dates of April 1, 2, 3, 10, 14, 18 and 19.

The Court is persuaded by the Defendants' contentions regarding Mr. Bax. Mr. Bax's first day of work on the case was April 7, 2003 – a full two years and four months after the complaint was filed. In other words, Mr. Bax had a lot of catching up to do. In the exercise of billing judgment, Plaintiff's counsel should have excluded certain hours because of the change in personnel. The Court finds that a reduction by one-third is an adequate adjustment. His 79.25 hour total between April 9 and May 27, 2003, reduced by one-third, rounds out to 52 hours – a 27.25 hour reduction.

### 2) Disputed Hourly Rates

After working through the hours adjustment, the next step in determining the lodestar is establishing a reasonable hourly rate for each of the attorneys involved, as well as the various support staff. The burden is on the prevailing party to show that her rates are reasonable and to comport with the established market rate. *Spegon*, 175 F.3d at 550. In order to meet this burden, Mr. Galarnyk has provided two separate fee agreements for his firm from the years 2002 and 2003. Additionally, he has furnished an affidavit from attorney Keith L. Hunt. Finally, Mr. Galarnyk testified before the Court as to his experience and billing practices, as well as the experience of his associates who worked on the case.

Mr. Galarnyk seeks $450 per hour for his work on this case. He supports this submission in his exhibit of past billing agreements of his firm, which list, for 2002, his billing rate as between $400 and $450 per hour, and between $250 and $450 for 2003. Additionally, Mr. Galarnyk testified that he receives $450 and $500 an hour from several

current clients. Mr. Hunt further substantiates Mr. Galarnyk's rate in his affidavit, stating "Four hundred and fifty dollars per hour for Mr. Galarnyk . . . [is] fair and reasonable under the circumstances of this case, particularly in light of the nature and complexity of the case, the issues involved, and the result achieved."

As mandated in *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993), once the prevailing party has shouldered the burden of establishing its market rate, it is up to the opposing side to show "a good reason why a lower rate is essential." Defendants are critical of Mr. Galarnyk's credentials, identifying him as "neither a top civil rights attorney, nor a civil litigator of any particular notoriety," Defendants' Response, p. 3, and noting his lack of published material. Defendants also attempts to discredit Mr. Galarnyk's rate by characterizing him as a sole practitioner. The Court finds that Mr. Galarnyk is a competent trial lawyer who achieved an excellent result in a difficult case.

In *People Who Care*, 90 F.3d at 1312, the court declared that a small sampling of bills is sufficient to establish an attorney's market rate. Furthermore, although the Supreme Court's ruling in *Blum v. Stenson,* 465 U.S. 886, 895 & n.11 (1984), that more than just the prevailing attorney's word is needed still stands, Mr. Galarnyk in fact has provided more than that in the instant case. He testified that he has been paid $450 an hour for the last few years. Beyond this mere assertion, however, are billing materials supporting the contention and the affidavit from Keith Hunt. The Court credits Mr. Galarnyk for his success in the case, the risks involved, and the general need to encourage competent attorneys to take on civil rights

12

cases. Mr. Galarnyk took a risk by assuming the Flaherty case on a contingency basis – the risk that he and his associates would spend many hours, over several years, and come away with nothing. Facing the potential burden of losing hundreds of thousands of dollars in fees, he took the case to trial and obtained a positive result for his client. He is the type of attorney the civil rights laws seek to encourage.

The *Rivera* Court reiterated the Supreme Court's call in *Hensley* for civil rights plaintiffs to have the services of competent representation. *Rivera*, 477 U.S. at 578-80. Thus, there must be adequate rewards for the risk of assuming these difficult, time consuming, and potentially fee-empty cases. Accordingly, based on the success obtained at trial, the policy imperative to encourage attorneys to take these risky cases and be awarded their market rate in return, and evidence that Mr. Galarnyk is able to bill clients at $450 per hour, the Court finds his rate reasonable in this case.

Plaintiff contends that the other attorneys involved in the case charge as follows: Kathryn Hoying at $200 per hour, Amanda Ripp at $175 per hour, and Nicholas Bax at $150 per hour. Mr. Galarnyk provided support for these rates by exhibiting two of his firm's billing proposals, showing his associates billing rates to be between $125 and $250 for 2003, and between $200 and $300 for 2002. Additionally, he testified before the Court to each of his associates' levels of experience,[6] and the rates at which he had billed them out in other

---

[6]At the time of their involvement in the case, Kathryn Hoying was two years removed from law school, and had worked with Galarnyk at a class action law firm, Amanda Ripp was two years out of law school, and Nicholas Bax was in his first year out of law school.

matters. Mr. Galarnyk's testimony revealed that each of his associates had different levels of experience and credentials, and thus charged different amounts. Furthermore, as an extension of the Court's general approval of fees in light of the outcome of the litigation, and the chances taken in allocating so much of his associates' time to the case, the rates for Hoying, Ripp, and Bax are reasonable for purposes of the lodestar.

In rebuttal to Plaintiff's request for $100 per hour for "paraprofessionals" Julie Wojcik, Laura Hernandez, and Monica Utyro, and $75 per hour for law clerk Charles Murphy, the Defendants question their actual capacity in the case, and suggests $40 per hour for all four as "secretarial and support staff." In *Newsome*, 2002 U.S. Dist. LEXIS 8793 at *26-28, several members of the support staff, listed only as "assistants," were billed out at $100 per hour under the guidance of a very reduction-oriented court.[7] Additionally, a law clerk working on the case was billed at $90 per hour. *Id.* at *32. Based on these assessments, and the Defendants' lack of contradicting argument, the Court finds the support staff rates for the Plaintiff's legal team are reasonable.

### 3) Enhancement/Reduction of the Lodestar

Although the Plaintiff argues for fee enhancement in her petition, without suggesting a multiplier, the Court instead has chosen to enhance by way of leniency in consideration of hourly rates, as previously detailed. Thus, multiplying the reasonable hourly rates by the reasonable number of hours yields a lodestar of $329,069.25 (($166,612.50 for Mr. Galarnyk

---

[7] One was allowed to bill at $140.00 per hour.

[370.25 hours x $450.00 per hour]) + ($108,350 for Ms. Hoying [541.75 hours x $200.00 per hour]) + ($13,632.50 for Ms. Ripp [77.9 hours x $175.00 per hour]) + ($29,512.50 for Mr. Bax [196.75 hours x $150.00 per hour]) + ($1,400 for Julie Wojcik [14 hours x $100.00 per hour]) + ($4,850 for Laura Hernandez [48.5 hours x $100.00 per hour]) + ($283 for Monica Utyro [2.83 hours x $100.00 per hour]) + ($4,428.75 for Charles Murphy [59.05 hours x $75.00 per hour])).

In addition to their various objections to the legitimacy of the hours billed in the case, and the rate at which Mr. Galarnyk and his associates billed, the County argues strenuously for a reduction in the lodestar based on the outcome of the trial. The Plaintiff succeeded on only one claim out of six. Regardless, the Court will not perform a mechanical reduction, as the Defendants suggest. Defendants count the Plaintiff as having succeeded on one out of six claims, or approximately seventeen percent of the original claims. Consequently, the County equates this rate of success with a corresponding need for more than a fifty percent reduction in the lodestar. The Court is disinclined to follow this methodology because of the substantial relief gained by the Plaintiff in the litigation and the factual interrelationship of the claims. The Court instead will look to the factors suggested by Justice O'Connor's concurring opinion in *Farrar*, 506 U.S. at 121-22: 1) the difference between the amount recovered and the damages sought, 2) the significance of the legal issues on which the plaintiff prevailed, and 3) the public purpose of the litigation.

First, the court recognizes that the Plaintiff achieved success on only one of her six counts. However, the damages sought were substantially the same for all counts. The Court views the jury award as a substantial victory, although less than requested. Plaintiff was left with no alternative to trial because the Defendants refused to offer more than $30,000, inclusive of attorney's fees, to settle the case. The result was a substantial victory in light of the settlement offer and was substantially greater than Plaintiff's last settlement demand.

Second, Plaintiff succeeded on an important issue in the litigation. The Court finds that the Plaintiff's success was on an important issue in the litigation. A significant amount of the facts in the case involved the hostile work environment claim.

Finally, the public purpose of the litigation does not favor a reduction in fees. Although the award is a victory for the Plaintiff individually and not for the public at large, *see Simpson*, 104 F.3d at 1002 (characterizing an award of attorney's fees as a deterrent to the belief that unconstitutional activity is economically advantageous), it serves as a deterrent and guide for future conduct of the Defendants and employers in general.

Considering the above factors, and the policy to support access to the competent counsel and access to the jury system in civil rights cases, the Court finds that a fifteen percent reduction in the lodestar figure is an appropriate reflection of the Plaintiff's success in the case. Thus, the final total for attorney's fees due Plaintiff in this case is $279,708.86 ($329,069.25 x 0.85).

## B. BILL OF COSTS

In addition to reasonable attorney's fees, Plaintiff by extension is presumptively entitled to recover costs reasonably incurred in the course of her Title VII litigation. The County does not dispute this matter, but wishes to reduce the requested amount.

Plaintiff seeks to recover $24,676.18 in costs. From this total, Cook County objects to: 1) all $7,142.23 that the Plaintiff claims under the heading "other costs" on her bill of costs, objecting to the lack of itemization, 2) $2,477.15 in court reporter charges, claiming some of the bills are duplicates, and 3) $236.00 in expert witness fees, owing to miscalculation. The County does not dispute $150 filing fee, $400 for service of witnesses, and $1,441.35 in copying costs. The County suggests a reduced sum of $14,940.80. The Court will address Defendants' concerns in order.

First, the Court recognizes the difficulties that can arise over the course of a multi-year action in keeping records and receipts itemized and intact. Regardless, any mistakes or redundancies in billing should not burden the non-prevailing party in the litigation. After reviewing the itemized bills and copies of checks included in the supplemental, itemized portion of the bill of costs, it appears that the Plaintiff has inadvertently included some of these extraneous charges, notably under her ambiguous "other costs" heading. Plaintiff requests $7,142.35 in other costs, which the County disputes in its entirety. In supporting materials provided by the Plaintiff, there are several categories of charges listed. Included are bills for Federal Express, a private investigator, medical records, a messenger service, and

Westlaw research. Additionally, there are detailed office logs listing photocopying, facsimile, and postage costs. The sum of these charges, however, is only $1,481.95. The Court is inclined to award Plaintiff for all of these requests except the messenger service, which is inadequately documented, and for the private investigator, which is outside the scope of the litigation. Plaintiff requested $40 and $266 respectively for these activities, which the Court will deduct from the $1,481.95, reducing the allowed costs in this category to a total of $1,175.95.

Second, the County challenges the legitimacy of Plaintiff's demand for $6,095.40 in court reporter fees. In examining the Plaintiff's statements regarding the charges for the court reporter at depositions, the Court notices a discrepancy between the itemized statements and actual receipts. Additionally, there are notations in the margins of the statements indicating merger or duplication of some of the charges. Because of this inadvertent mistake, the Court will reduce the costs for court reporter services to $3,791.90.

Third, the County disputes a minor difference between the amount claimed by Plaintiff for her expert witness, and the amount actually owed (and paid) to the expert witness. It is unclear to the Court how the Plaintiff calculated her dollar amount of $9,567.20, but on an email contained in the billing records to Plaintiff's attorney, the expert witness very clearly relays the total owed: $9,331.20. The Court will award this amount.

Thus, by totaling the $3,791.90 for the court reporter, $9,331.20 for the expert witness, and $1,175.95 in cumulative "other" costs, in addition to the stipulated $150 in filing

fees, $400 in service of process fees, and $1,441.35 in copying charges, the Court will allow

for costs in the amount of $16,290.40.

## C.     FRONT PAY DAMAGES

Plaintiff also seeks, in addition to her bill of attorney's fees and costs, reimbursement

for front pay damages in the amount of $130,000. Title VII allows for both equitable and

compensatory remedies. Section 2000e-5(g)(1) gives the courts the ability to "order such

affirmative action as may be appropriate, which may include, but is not limited to,

reinstatement or hiring of employees, with or without back pay . . . or any other equitable

relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). Although reinstatement

is the preferable remedy for victims of discrimination, the court is not required to reinstate

a victorious plaintiff when it would result in a tumultuous working environment. *Bruso v.*

*United Airlines, Inc.*, 239 F.3d 848, 861-62 (7th Cir. 2001). Front pay is appropriate when

reinstatement is either unavailable or unadvisable. *Shick v. Ill. Dep't of Human Servs.*, 307

F.3d 605, 614 (7th Cir. 2002).

Front pay is designed to put the plaintiff "in the identical financial position that he

would have occupied had he been reinstated." *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d

1219, 1231 (7th Cir. 1995). As a substitute for reinstatement, front pay is designed to

compensate the plaintiff for lost earnings from her job, for as long as she could have

expected to hold the job, and earnings from subsequent employment are deducted from any

front pay award. *Shick*, 307 F.3d at 614. Damages in employment discrimination cases

"'should ordinarily extend only to the date upon which 'the sting' of any discriminatory

19

conduct has ended.'" *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1371 (7th Cir. 1992) (quoting *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir. 1992)). Thus, the plaintiff should be compensated for a reasonable time it would take to find comparable employment. *Shick*, 307 F.3d at 614.

Furthermore, the party seeking front pay must provide the court with information necessary to calculate a reasonably certain award including: the proposed amount, the amount of time the plaintiff expects to work for the defendant, and the applicable discount rate. *Bruso*, 239 F.3d at 862 (citing *McKnight*, 973 F.2d at 1372). Finally, lost pay damages, including front pay, should not be awarded in cases in which there is no discriminatory discharge. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659-61 (7th Cir. 2001).

Although the Court agrees with Plaintiff that reinstatement at this point would be futile, it does not agree with her corresponding argument that, in the alternative, front pay damages are appropriate. The Plaintiff has been employed off and on, in various capacities, since her termination from the County five years ago. The Court finds that Plaintiff's work history demonstrates that the sting of the discrimination was over by the time of the trial and that she is capable of earning substantially the same amount compared to what she would be earning as a court clerk.

## III. PREJUDGMENT INTEREST

In cases involving violations of federal civil rights laws, prejudgment interest is available as a matter of course on an award of backpay, as long as the amount is readily

determinable. *Williamson v. Handy Button*, 817 F.2d 1290, 1297-98 (7th Cir. 1987). The Court awards two years interest at 5% for a total of $7,500.

## IV. CONCLUSION

For the foregoing reasons, **the Court grants in part and denies in part Plaintiff's petition for attorney's fees and costs, allowing for $279,708.86 in attorney's fees and $16,290.40 in court costs, for a total of $295.999.26. The Court denies Plaintiff's request for front pay damages. The Court grants Plaintiff's motion for prejudgment interest in the amount of $7,500.00 on her backpay award.**

**SO ORDERED THIS 17th DAY OF SEPTEMBER, 2003**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

Copies mailed to:

John D. Galarnyk
GALARNYK & ASSOCIATES, LTD.
Three First National Plaza
70 West Madison Street
Suite 2015
Chicago, IL 60602

Attorney for Plaintiff

Brian E. Clauss
Mary P. Tobin
COOK COUNTY STATE'S ATTORNEY
500 Richard J. Daley Center
Chicago, IL 60602

Attorneys for Defendant